## Gowen's Estate.

*Practice, O. C.—Accounting by fiduciaries after twenty years—Debts and advancements.* ·

1. A fiduciary may voluntarily file an account after twenty years have elapsed since the liability to account accrued, although the accounting could not have been adversely compelled.

2. Where parties in interest could have demanded the vouching of the account at the audit and failed to do so and the account was confirmed, they may not raise questions upon the hearing of exceptions to a subsequent account which should have been raised at the audit of the earlier account and might have been satisfactorily answered by the vouching thereof.

3. A memorandum submitted by counsel at the audit, compiled from the former accounts in the estate of record in the Orphans' Court, and capable of verification by reference thereto, is not to be excluded from the consideration of the auditing judge as an unsworn *ex parte* statement.

4. Where a testator directs that in the division of either the income from unsold real estate or the proceeds of his personal or real estate an indebtedness to him by one of his sons on certain bonds given him by his son and specified by date and amount in the will, "shall be taken into account and that the then existing amounts of the said indebtedness shall, according to the said amounts respectively, be deemed and taken to be advancements" on account of said son's share, and that no money shall be appropriated to the share apportionable to said son until the shares apportionable to or for testator's other children shall have actually amounted to the principal and interest then due upon the said existing indebtedness, he has, in effect, converted such indebtedness into an advancement, and neither the statute of limitations nor the presumption of payment from lapse of time applies.

Exceptions to adjudication.   O. C. Phila. Co., Oct. T., 1881, No. 386.

James Gowen died Jan. 8, 1873, leaving a will, which was duly admitted to probate, the eighth clause of which read as follows:

"Item Eighth.   I further will and direct that in each and every division of either the income of my unsold real estate, or of the proceeds of my personal or real estate, an indebtedness of my son Alfred to me in the sum of six thousand dollars, and an indebtedness to me by my son Henry in the amount of three certain bonds given by him to me, one of them dated the twentieth of April, A. D. eighteen hundred and seventy, conditioned for the payment of the sum of twenty-four thousand dollars on the twentieth day of April, A. D. eighteen hundred and seventy-five, with interest from date; one other of them dated October eighth, A. D. eighteen hundred and seventy, conditioned for the payment of the sum of three thousand five hundred dollars on the eighth day of October, A. D. eighteen hundred and seventy-five, with interest from date, and the other of them dated the sixteenth day of February, A. D. eighteen hundred and seventy-one, conditioned for the payment of the sum of seventeen thousand one hundred and twenty-eight dollars and eighty-six cents within three years from date, with interest, and amounting together to

the sum of forty-four thousand six hundred and twenty-eight dollars and eighty-six cents, with interest as aforesaid, shall be taken into account; and that the then existing amounts of the said indebtedness shall, according to the said amounts respectively, be deemed and taken to be advancements on account of the shares respectively apportionable as hereinbefore directed for the benefit of my son Alfred and his family and to my son Henry, and that no money shall be appropriated to the share apportionable to my son Henry until the share apportionable to or for my other children shall have actually amounted to the principal and interest then due upon the said existing indebtedness, and that the same rule shall be followed as to the share apportionable for the benefit of my son Alfred and his family, excepting that, in view of his situation and that of his family, no interest shall be charged on the said indebtedness; and while nothing herein contained shall be construed as releasing the indebtedness of my son Henry to my estate, yet I do authorize and empower my executors, and the survivors and survivor of them, to use their discretion as to proceeding to collect the said indebtedness; and I do hereby expressly declare that they shall not be held responsible for any delay or indulgence which they may think proper to extend to him. As to the indebtedness of my son Alfred, owing to the fact of its being undoubtedly less than the share which he would be entitled to receive on a division of my estate, according to the Intestate Laws of Pennsylvania, and in consideration of other circumstances, I direct that it shall be treated only as an advancement on account of the aforesaid share apportionable for the benefit of my said son and his family, and that no attempt shall be made to hold him personally responsible for the same."

Testator's testamentary trustees filed their first account on March 13, 1882, and their second on April 28, 1885. Franklin B. Gowen, surviving trustee, died Dec. 14, 1889, without filing an account, nor was any filed by his personal representative. On Feb. 19, 1890, Francis I. Gowen and James E. Hood were appointed substituted testamentary trustees, and on May 23, 1923, filed an account, in which they charged themselves with a sum said to be a balance in the hands of Franklin B. Gowen, deceased prior trustee. At the audit of this account, which came up before Thompson, J., a claim was made on behalf of the estate of Henry Gowen for his distributive share of the residuary estate under the will, on the theory that the bonds referred to in the eighth clause, above quoted, were to be presumed, in law, paid by lapse of time, and, hence, did not prevent his asserting his claim to his distributive share. The Auditing Judge held that, under the eighth clause, the moneys he had received from the testator in his lifetime must be regarded as an advancement, as distinguished from a debt, and, hence, the presumption had no application, and as the executors showed that in point of fact Henry had never paid his obligations, the claim was disallowed.

On exceptions, the court in banc, in an opinion of Dec. 19, 1924, by Henderson, J., referred the matter back to the Auditing Judge on the ground that there was no accounting by the trustees for the period between 1885 and 1890, and that the information which would properly be contained in such accounting was essential to enable the court to determine whether the remaining distributees had each received an amount equal to the amount stated in the will to be due by Henry, together with interest thereon. Exceptions were, therefore, dismissed pro forma and without prejudice.

On Jan. 7, 1925, Francis I. Gowen and James E. Hood, as administrators of Franklin B. Gowen, deceased, filed his account as surviving testamentary trustee for the period between 1885 and 1890. Both accounts, i. e., that of

Gowen's Estate.

May 23, 1923, and that of Jan. 7, 1925, came up for audit Feb. 5, 1925, before Thompson, J.  At the audit, counsel for Henry moved to strike the latter account from the files for the following reasons:

"1. That said accountants having been appointed administrators Dec. 21, 1889, after a lapse of more than twenty-one years following their appointment, they are without power to state said account.

"2. That thirty-four years having elapsed since said administrators were appointed, and Henry G. Gowen, whose interest is affected by said account, having died in 1909, the said Henry G. Gowen and his administrator have been deprived of the legal right to have that account stated at a time when they had reasonable opportunity to investigate the truth of the charges and credits therein and omissions therefrom."

· The motion was overruled.  The Auditing Judge filed the following adjudication:

"On June 13, 1924, I filed an adjudication of the first account of Francis I. Gowen and James E. Hood, substituted trustees under the will of James Gowen, deceased, said account having been filed by them May 23, 1923, and held, as will appear by a reference to said adjudication, that the indebtedness of Henry G. Gowen to the estate must be treated as an advancement and not as a debt,, and further held that the shares heretofore distributed to the other legatees were less than the indebtedness of his son, Henry G. Gowen, with interest.  Exceptions were filed to my adjudication, and, upon argument, the court *in banc* were of the opinion that I had not sufficient data before me to warrant the conclusion reached in my adjudication that distribution to the other legatees was not equal to the amount of the son's indebtedness, with interest, and directed that an accounting of the affairs of the trust for the period between 1885 and 1890 be supplied.  This has been done by the filing of the account of Franklin B. Gowen, surviving trustee under the will of James Gowen, as stated by Francis I. Gowen and James E. Hood, administrators of Franklin B. Gowen, deceased, which account has been adjudicated by me in an adjudication bearing even date herewith, so that I now have before me the accounts of the various successive trustees in this estate from the date of the decedent's death to the date mentioned in the last account filed on May 23, 1923, all of which accounts and the adjudications thereon are of record in this court. ·

"Mr. Hood has prepared a statement of indebtedness of Henry G. Gowen, prepared from information derived from the trustees' accounts as filed in this court, crediting Henry G. Gowen's indebtedness to the estate with the amount paid the other legatees, and showing that, after crediting the indebtedness of Henry G. Gowen with all amounts properly credited thereto, it would require the payment of $40,158.57, calculated as of June 5, 1924, by Henry G. Gowen or those claiming under him, before he would be on an equality with the other legatees, or, in other words, the other legatees have not received to the date of the filing of the last account a sum of money equal to the indebtedness of Henry G. Gowen, with interest.

"Mr. Hood has also prepared and submitted from the information contained in the accounts as filed a statement showing what each of the other seven legatees has received, which shows that each legatee, exclusive of Henry G. Gowen, has received $68,201.07, both of which statements of Mr. Hood I adopt as correct.

"I confirm and ratify what I said in my adjudication filed June 13, 1924, to the effect that the indebtedness of Henry G. Gowen to the estate is to be considered as an advancement and not as a debt, and carries interest as provided

by the will. The will provides: 'No money shall be apportioned to the share apportionable to my son Henry, until the share apportionable to or for my other children shall have actually amounted to the principal and interest then due upon said existing indebtedness.' An inspection of the above calculations shows that Henry G. Gowen is not entitled at the present time to participate in the distribution of the balance shown to be in the hands of the present accountants.

"I see no reason to change the conclusions reached in my adjudication filed on June 13, 1924, and, therefore, the same is confirmed *nisi*, this 16th day of February, 1925."

In regard to the objections taken to the admissibility of the statement prepared by Mr. Hood, referred to in the above adjudication, the Auditing Judge said in disposing of the account filed by the administrators:

"I took testimony, which is annexed hereto, to show how the account before me was prepared, and Mr. Hood was sworn and gave testimony to the effect that the account before me was prepared from a book in which he made all the entries since April, 1885, at which time he entered Franklin B. Gowen's office and had charge of the estate of James Gowen, and this book contained a record of the transactions of the James Gowen estate, and no other transactions. The account before me was prepared from these books, which were submitted, in the years 1893 or 1894, and put in typewriting, but never filed until Jan. 7, 1925, and the reason given by Mr. Hood for its not being filed earlier was that they expected to sell all the assets of the estate and wind the same up in a final accounting. Mr. Hood had before him on the witness-stand the original books containing the entries made by him in the Gowen estate for the period in question, as by reference to the testimony of Mr. Hood will fully and at large appear. It does not appear that Mr. Edwards's client, or those under whom he claims, ever made any request for information as to the affairs of the estate or the state of the accounts, which were readily accessible to all interested therein, and if access to the same had been denied, any person interested could have compelled the filing of an account.

"The balances shown in the account before me, subject to distributions therein set forth, are, therefore, awarded to Francis I. Gowen and James G. Hood, substituted trustees under the will of James Gowen, deceased."

To this adjudication exceptions were filed by Henry's administrator: (1) To the refusal to strike account from the files; (2) to the action of the Auditing Judge in basing his adjudication in part upon the statement of indebtedness of Henry to the estate, prepared by Mr. Hood, one of the accountants; (3) to his reliance upon a written statement by Mr. Hood, showing what each of the seven legatees had received; (4) to the Auditing Judge's confirmation and ratification of his adjudication, June 13, 1924, to the effect that the indebtedness of Henry was to be considered as an advancement and not as a debt, and carried interest as provided by the will; and (5) to his finding that Henry was, therefore, in view of the condition of his accounts, not entitled at the present time to participate in the distribution of the balance shown to be in the hands of the present accountants. Sundry other matters were also made grounds of exception, which it is believed unnecessary to state.

*Graham C. Woodward* and *George J. Edwards, Jr.*, for exceptions.

*George Gowen Parry*, contra.

HENDERSON, J., March 27, 1925.—We know of no reason why a trustee may not file an account after the lapse of time herein complained of, and even

Gowen's Estate.

though the accounting could not have been adversely compelled. This exceptant administrator or his decedent could have compelled the account complained of at the proper time, but failed to do so.

The motion to strike the account from the record was properly refused. The exceptant could have demanded the vouching of the account and put the accountants to the proof of every item contained therein. He probably could not dispute the items, at least he acquiesced in them, and must now stand bound by their confirmation.

The memorandum submitted by counsel, showing nothing was due this exceptant, cannot be called an unsworn ex parte statement. It was compiled from the accounts of record in this estate and may be verified by reference thereto.

The eighth paragraph of this will recited the debts due by this son, directed they should not be released, and empowered the trustees to use their discretion in collection. The testator aimed at equality as between his children. If the debt was not repaid, it was to be charged as an advancement against his son's distributive share, and he was to take nothing until the shares paid the others actually amounted to the principal and interest due by him. The testator has served his own purposes by mingling the legal conceptions of debts and advancements, and this he had a right to do. Whether these debts could now be collected is aside from the question. See Knoppel's Estate, 1 D. & C. 262. This son can take nothing until the terms of the will have been complied with by according equality to the other children.

In the view which we take of the case, it becomes unnecessary to consider the competency to testify of Francis I. Gowen. Before this exceptant can take anything, the burden is on him to observe the terms of the will, i. e., to show he has discharged his obligation to the estate or stand aside until the others have had equality with him accorded to them.

Statements offered in the petition for distribution have no evidential value. In this case the averments complained of were mere deductions from the accounts of record in this estate and may'be verified by reference thereto.

Both sets of exceptions are dismissed and both adjudications are confirmed absolutely.

LAMORELLE, P. J., did not sit.